409 A.2d 906

**COMMONWEALTH of Pennsylvania**

v.

**Gregory W. HENSON, Appellant.**

Superior Court of Pennsylvania.

Argued July 16, 1979.

Filed Sept. 7, 1979.

A. Benjamin Johnson, Jr., Philadelphia, for appellant.

Andrew B. Cohn, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

HONEYMAN, Judge:

Gregory W. Henson appealed from the judgments of sentence imposed following his conviction of murder in the first degree and robbery, for which he received a life sentence on the murder conviction and a concurrent 10 year to 20 year sentence on the robbery conviction. He complains about six matters, two of which are utterly devoid of merit. We will address ourselves to the remaining four.

The victim was an 82 year old woman who owned and operated a boarding house in Philadelphia, wherein she resided in the first floor apartment with her son. At 6:00 p. m. March 14, 1977, the son returned home to find his

* Justice Henry X. O'Brien of the Supreme Court of Pennsylvania and Judge Robert W. Honeyman of the Court of Common Pleas of Montgomery County, Pennsylvania are sitting by designation.

mother's bedroom ransacked. He then observed his mother lying face down on the living room floor. It was established that she had been killed by strangulation. She customarily kept her money purse containing a few hundred dollars pinned to her apron. When she was found her apron was ripped and a safety pin was found near her body. The purse was missing. There was no evidence of forced entry. The appellant rented quarters from her on the third floor of the building.

Later that same evening, while interviewing neighbors in front of the boarding house, a detective was approached by appellant, following which they went to his third floor room for an interview. Appellant told the police that he had been at a relative's home at all times relevant to the commission of the crimes. However, the police learned that appellant had been seen exiting the boarding house carrying a large paper bag shortly before the victim's son returned. Since this conflicted with the statement of appellant, the police returned to further interview him at 4:00 a. m. the next day. Appellant stated a preference to pursue the matter later on in the day and the police acquiesced therein. At 11:00 a. m. the police transported appellant to the Police Administration Building. He waived his *Miranda* rights and gave an exculpatory statement, following which he assented to take a polygraph test, which was concluded at 3:19 p. m. The polygrapher concluded that he had been deceptive and untruthful, whereupon he was again warned of his *Miranda* rights and he again waived them. Commencing at 3:50 p. m. he gave an inculpatory written statement which was completed at 5:10 p. m. His arraignment occurred at 8:45 a. m. March 16, 1977. At the conclusion of a suppression hearing with respect to the statement, suppression thereof was denied.

■ Appellant complains that the suppression hearing judge was in error. It should be noted that the "six hour rule" enunciated in *Com. v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1978) does not pertain to this case. Therefore, it is governed by the principles enunciated in *Com. v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and *Com. v. Williams*, 455 Pa.

569, 319 A.2d 419 (1974). Although there appears to have been no necessity for the delay in his arraignment, we find no nexus between such unnecessary delay and the statement. The suppression judge found as a fact that the arrest did not occur until he made his first inculpatory utterances. The appellant contends that he was under arrest from the time he was taken from his dwelling by the police and says that that occurred at 7:00 a. m. and that he was handcuffed, abused, and that his request for counsel was denied. Opposed to that, the police testified that they picked him up at 11:00 a. m. and they denied appellant's other allegations. This factual conflict was resolved by the suppression judge in favor of the Commonwealth and we see no reason to disturb his findings. Even if there was sufficient restraint upon his liberty at 7:00 a. m. to constitute an arrest, the time lapse between then and the commencement of the inculpatory statement was 4 hours and 50 minutes. The suppression judge further found that most of that time interval was consumed by the administration of the polygraph test. Such lapse of time falls well within the accepted standards enunciated in many pre-*Davenport* cases. Therefore, we find no error in the admission of the statement.

■ Next, appellant asserts that the trial judge erred in his denial of the motion to suppress evidence of appellant's prior convictions. The appellant had been convicted of robbery in 1975 and of theft by extortion in 1973. Both such crimes are clearly crimen falsi and were committed while appellant was an adult. In the face of the adverse ruling, appellant still testified on his own behalf. In his testimony he reasserted the alibi assertions which he had twice made to the police. This suppression issue rested in the sound discretion of the trial judge. In making such decision he correctly applied the standards applicable thereto as set forth in *Com. v. Bighum*, 452 Pa. 544, 307 A.2d 255 (1973). The later revised standards enunciated in *Com. v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978) would not apply to this issue. We find no error by the trial judge in this regard.

■ In the direct examination of appellant, there was elicited from him testimony concerning his two prior convic-

tions. He said that he had entered pleas of guilty in both instances. On cross-examination, the prosecutor confronted him with the record facts that in one case he had been convicted by a jury and in the other by a judge sitting without a jury. Now, appellant asserts that it was error to permit such cross-examination. *Com. v. Jones,* 250 Pa.Super. 98, 378 A.2d 471 (1977) holds that evidence concerning an accused's prior criminal record should be limited to criminal offense, the time interval and the punishment. However, by reason of appellant's initial false or inaccurate statements concerning the prior proceedings, we see no reason to prohibit the prosecutor from challenging same on cross-examination. If left unchallenged, it could have given rise to an argument by defense counsel that on the two prior occasions he was guilty and came forward and admitted his guilt, whereas in the instant case he was not guilty and thus exercised his constitutional right to be tried by a jury of his peers. Such an argument might well be persuasive in the minds of twelve laymen. To have potentially permitted such an argument founded on a false premise would have been error of judgment or discretion on the part of the trial judge.

■ Finally, appellant cites as a reason for a new trial alleged prosecutorial misconduct. He contends that the prosecutor, in his summation, compared him to a wild animal. The comment, in the form of a rhetorical question was as follows:

"Is that the kind of man who would beat a confession out of somebody and then give him every break, every exculpatory statement? Or is that the kind of man who would willfully and deliberately cut off the air of another human being, strangle her till she was dead, rummage her pockets and her apartment and then leave and run and hide like a jackal? Hide outside and peek around corners until he knows he's got to come because somebody is gone because that's what he did. Thank you."

The reference to a jackal was in the abstract, referring to whoever perpetrated the crime, and not specifically to the appellant. We do not believe this transcends the applicable

Canons of the American Bar Association, nor the holdings in the cases of this Commonwealth interpreting such canons. In *Com. v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977) Chief Justice Eagen said 473 Pa. at pages 133–134, 373 A.2d at page 1085:

> ". . . However, it is also true that not every intemperate and improper remark by the prosecution will require a new trial. 'The language must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict"' . . ."

To the same effect see *Com. v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). The above cited remarks of the prosecutor herein certainly do not rise to the magnitude of the proscribed remarks made in the cases of *Com. v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977), and *Com. v. Smith*, 478 Pa. 76, 385 A.2d 1320 (1978). In *Gilman* the prosecutor called the accused "a cold blooded killer, sly, calculating, deceiving and a dog." In *Smith*, the prosecutor referred directly to the accused as a "vicious, desperate criminal who would kill for a nickel."

Judgments of sentence affirmed.