653 A.2d 626

COMMONWEALTH of Pennsylvania, Appellee,

v.

Ronald ROMPILLA, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 20, 1994.

Decided Jan. 23, 1995.

500

502

Albert V.F. Nelthropp, for R. Rompilla.

Robert Steinnberg, Douglas G. Reichley, for Com.

Robert A. Graci, for Atty. General's Office.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

504

## OPINION

NIX, Chief Justice.

This is an automatic appeal [1] from the imposition of a death sentence following a trial by jury in the Court of Common Pleas of Lehigh County. Appellant, Ronald Rompilla, was convicted of murder of the first degree,[2] burglary,[3] criminal trespass,[4] robbery,[5] two counts of theft,[6] and two counts of receiving stolen property.[7] Pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), the jury sentenced Appellant to death on November 1, 1988, after it found three aggravating circumstances which outweighed the one mitigating circumstance presented by Appellant.

 Although Appellant has not specifically challenged the sufficiency of the evidence supporting his conviction, we will nevertheless undertake such a review in accordance with the standard set forth in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).[8] In

1. 42 Pa.C.S. § 9711(h)(1).

2. 18 Pa.C.S. § 2502(a).

3. 18 Pa.C.S. § 3502(a).

4. 18 Pa.C.S. § 3503(a)(1)(ii).

5. 18 Pa.C.S. § 3701(a)(1)(i).

6. 18 Pa.C.S. § 3921(a).

7. 18 Pa.C.S. § 3925(a).

8. Appellant has apparently had a contentious history with court-appointed counsel during his trial and appeal. Appellant's discontent with his attorneys has caused him to file a number of *pro se* motions and briefs in addition to those filed by court-appointed counsel. Present counsel has appended to the Brief for Appellant what is represented to be Appellant's own brief alleging other issues not included in counsel's brief. This appended brief authored by Appellant is addressed to the trial court and is intended to be a supplemental brief in support of Appellant's post-trial motions.

This Court recently addressed the issue of an appellant's right to file *pro se* supplemental briefs while that appellant is represented by counsel. In *Commonwealth v. Rogers*, 537 Pa. 581, 645 A.2d 223 (1994), we held that although an appellant has a clear right to terminate representation *prior* to the filing of an appeal, there is no concomitant right to file a separate *pro se* brief once appellate counsel has filed briefs. *Id.* at

reviewing the sufficiency of the evidence, we must view the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth as verdict winner, to determine whether all the elements of the offense have been established beyond a reasonable doubt. *Commonwealth v. Carpenter*, 511 Pa. 429, 435, 515 A.2d 531, 533–34 (1986).

In the early morning hours of January 14, 1988, the victim, James Scanlon, was murdered in his bar, the Cozy Corner Cafe, located in Allentown, Pennsylvania. At approximately 6:30 a.m. on that same morning, the victim's son discovered the body of his father lying behind the bar in a pool of blood. The victim had been stabbed repeatedly and set on fire. The victim's wallet had been stolen and approximately $500 to $1,000 had been stolen from the bar.

The Commonwealth's case consisted almost entirely of circumstantial evidence as there were no eyewitnesses to this killing. Appellant was seen in the Cozy Corner Cafe on January 14, 1988, from approximately 1:00 a.m. to 2:00 a.m. During that time, he was observed going to the bathroom approximately ten times. A subsequent police investigation determined that the window in the men's bathroom was used as the point of entry into the bar after it had closed.

When questioned by an investigating detective from the Allentown Police Department, Appellant stated that he had been in the Cozy Corner Cafe on the night of the murder and

583–84, 645 A.2d at 224. Thus, we refused to allow the appellant in *Rogers* to terminate appellate counsel and proceed *pro se* on amended and supplemented briefs once counsel had filed briefs. It was our belief that the appellant would "confuse and overburden the court by his own pro se filing of briefs at the same time his counsel is filing briefs on his behalf." *Id.* (quoting *Commonwealth v. Ellis*, 534 Pa. 176, 183–84, 626 A.2d 1137, 1141 (1993) (emphasis omitted)).

A review of the issues raised in Appellant's *pro se* brief reveals that Appellant's claims are focused on the sufficiency of the evidence and trial counsels' ineffectiveness. As noted above, we are obligated to undertake an independent review of the sufficiency of the evidence supporting Appellant's conviction. We also hasten to point out that Appellant is free to raise the ineffectiveness of any of his prior counsel in a subsequent proceeding. Accordingly, we will not specifically address any of the issues raised in Appellant's *pro se* brief.

left between 2:00 a.m. and 2:30 a.m. because he had no money. He stated that he had only $2.00 to buy breakfast at a local diner. A cab driver testified that he picked up Appellant at the diner and drove him to two different hotels where Appellant was unable to rent a room. The driver then took Appellant to the George Washington Motor Lodge where he was able to rent a room. Appellant paid the cab fare of $9.10.

Appellant rented a room for two nights at the George Washington Motor Lodge. In doing so, he paid $121.00 in cash and flashed a large amount of cash to the desk clerks. Appellant also used a false name when he checked in.

The police secured a search warrant for Appellant's motel room and seized several items, including Appellant's sneakers. These sneakers matched a footprint in blood that was discovered near the victim's body. In addition, the blood found on the sneakers matched the victim's blood type.

The Commonwealth also presented other circumstantial evidence that linked Appellant with the robbery and murder of James Scanlon. First, Mr. Scanlon's wallet was found by a groundskeeper in the bushes, six to eight feet outside the room that Appellant had rented at the George Washington Motor Lodge. Second, Appellant's fingerprint was found on one of the two knives that was used to commit the murder. Finally, there were numerous inconsistencies between what Appellant had told police concerning his activities on January 14 and 15, 1988, and the testimony of other witnesses.

When viewed in the light most favorable to the Commonwealth as verdict winner, the evidence clearly supports Appellant's conviction for first degree murder. Accordingly, we will now proceed to address Appellant's seven allegations of error relating to the trial underlying his conviction and sentence.

Appellant first contends that the trial court erred in allowing the Commonwealth to introduce a photograph of the victim in this case. The photograph in question, Commonwealth's Exhibit Number 5, shows the body of the victim lying face down behind the bar among a number of broken bottles. Appellant argues that the inflammatory nature of this photo-

graph outweighs any evidentiary value that it may have had. The Commonwealth responds that the photograph is not inflammatory, and even if this Court were to find otherwise, its introduction was necessary to capture the disarray of the bar and to show the severity of the struggle between the victim and Appellant.

■ "We have consistently held that the question of admissibility of photographs in homicide cases is a matter within the discretion of the trial judge, and only an abuse of that discretion will constitute reversible error." *Commonwealth v. Duffey,* 519 Pa. 348, 359, 548 A.2d 1178, 1183 (1988) (citing *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974); *Commonwealth v. Woods,* 454 Pa. 250, 311 A.2d 582 (1973)). In determining the admissibility of photographs of a corpse in a homicide trial, this Court utilizes a two-part analysis. *Commonwealth v. Chester,* 526 Pa. 578, 591, 587 A.2d 1367, 1373, *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

First a court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Id.* 526 Pa. at 591–92, 587 A.2d at 1373–74 (citation omitted).

■ Based on our review of the photograph, we find that, although unpleasant, it does not rise to the level of what we consider to be inflammatory. The distance from the body and the angle from which the photograph was taken tend to diminish the inflammatory nature of the subject matter. Moreover, the number of broken bottles surrounding the victim makes it difficult, if not impossible, to discern whether the substance beside the victim is alcohol or blood.

■ In addition, we agree with the Commonwealth and the en banc trial court that even if we were to find the photograph inflammatory, it would still be admissible based on its eviden-

tiary value. The photograph was introduced by the Commonwealth to demonstrate the state of disarray of the bar and the severity of the struggle between the victim and his attacker. Accordingly, we conclude that the trial judge did not abuse his discretion in admitting this photograph into evidence.

Appellant next argues that the trial court erred in answering the jury's question regarding accomplice liability. Shortly after deliberations began, the jury presented a note to the court in which it asked the following: "If Defendant was an accomplice to the Charge of Criminal Homicide, can he be charged with Murder in the First Degree?" (N.T. 10/31/88, 166). In response, the trial judge read 18 Pa.C.S. § 306(a), which defines the general rule for liability for conduct of another,[9] and briefly explained the concept of complicity to the jury. (N.T. 10/31/88, 167–68). The trial judge then cautioned the jury:

I can only say this to you, that you should determine this case based on the Charge of the Court as it had given [sic] you originally. There was no evidence in this case with regard to the question as posed but a simple clear answer to the question is yes, you could be charged with, and you could be convicted of Murder in the First Degree if, indeed, you're an accomplice, but it requires other proof or findings on your part that were not apart [sic] of this case nor were they made a part of this case. . . .

(N.T. 10/31/88, 168–69). Appellant argues that by being instructed on an accomplice theory and then being told to disregard it, the jury might have been confused and convicted Appellant as an accomplice.

Appellant's claim is analogous to an issue that this Court addressed in *Commonwealth v. Edwards*, 521 Pa. 134, 555 A.2d 818 (1989). In *Edwards*, the jury asked the trial judge whether it had the option to condition a verdict of life imprisonment on the defendant's ineligibility for parole. In his initial response to the jury, the trial judge deviated from

9. 18 Pa.C.S. § 306(a) provides that "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both."

the standard that we had previously prescribed when the jury asked such a question. We concluded that despite this error, the curative instruction and proper charge that were subsequently given were sufficient to leave the jury's death sentence undisturbed. *Id.* at 158–59, 555 A.2d at 830–31. Likewise in the instant case, we are satisfied that any error which might have resulted from the trial judge's instruction on accomplice liability was cured by the subsequent admonition to the jury that it should not consider such a theory because there was no evidence presented during trial to support such a finding.

■ Additionally, we reject Appellant's argument that the trial court erred in failing to grant defense counsel's request that the culpability portion of section 306 be read to the jury. As noted above, the jury was specifically instructed that it was not to consider accomplice liability in its deliberations. Therefore, the denial of Appellant's request was well within the trial judge's discretion. *See Commonwealth v. Perkins,* 473 Pa. 116, 132, 373 A.2d 1076, 1084 (1977) ("when the court provides supplemental instructions at the jury's request, it may confine those instructions to the particular questions asked by the jury, even though requested by the defendant to give yet additional instructions").

■ Appellant next contends that trial counsel was ineffective for failing to file a request for a bill of particulars. By requesting a bill of particulars, Appellant argues that defense counsel could have limited the Commonwealth to the single theory that Appellant was the actor and not an accomplice. "A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations." *Commonwealth v. Chambers,* 528 Pa. 558, 580, 599 A.2d 630, 641 (1991), *cert. denied,* 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). In the instant case, the Commonwealth never asserted nor attempted to prove that Appellant's role in the murder and robbery was anything other than that of the actor.

Thus, Appellant's argument is plainly without merit. Because counsel can never be considered ineffective for failing to raise a meritless claim, Appellant's claim of ineffectiveness must be rejected. *See Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981).

In a related argument, Appellant contends that the trial court erred in refusing his request to poll the jury in order to ascertain whether he was convicted as an accomplice or actor. The record indicates that the jury was polled as to their individual verdicts, but the trial judge refused to question each juror as to whether they found Appellant guilty as an actor or accomplice. (N.T. 11/1/88, 5–7). Appellant again relies on the erroneous premise that the jury failed to heed the trial court's warning that it was not to consider an accomplice theory of liability. Our review of the record satisfies us that the trial judge clearly and adequately explained to the jury that there was no evidence offered to prove that Appellant acted as an accomplice and that it should not inject such considerations into its deliberations.

> The purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was not voluntarily joined in by the answering juror.

*Commonwealth ex rel. Ryan v. Banmiller*, 400 Pa. 326, 328, 162 A.2d 354, 355, *cert. denied*, 364 U.S. 852, 81 S.Ct. 99, 5 L.Ed.2d 76 (1960). In the instant case, Appellant has not alleged lack of unanimity of the verdict or that it was the product of undue pressure placed on one or more of the jurors. Accordingly, we conclude that the trial court did not err when it refused to poll the jurors on the theory upon which they convicted Appellant.

In his next allegation of error, Appellant asserts that the search warrant used to obtain evidence to link him to the crime was not supported by probable cause. The en banc

Court of Common Pleas considered Appellant's challenge to the search warrant and found that

[t]he affidavit in the present case, sworn to by a detective sergeant of the Allentown Police Department, contained sufficient averments supporting that there was a fair probability that evidence of a crime would be found in the defendant's room. The averments in the affidavit contained a general description and location of the crime and victim, as well as the fruits from what was properly believed to be a burglary and/or robbery, as well as the criminal homicide. The affidavit placed the defendant not only at the scene of the crime earlier that evening but also sets forth the fact that entry into the premises was gained by opening a window in the bathroom of the premises from the inside and that the defendant was seen going into the bathroom on a number of occasions that evening. Moreover, the detective sergeant observed a bloody footprint tread near the location of the victim's body, which pattern of tread was recognized to be similar to the one on the sneakers worn by the defendant when the police officer had interviewed him a short time prior to the execution of the affidavit. Lastly, the affidavit revealed that the defendant had checked into the room sought to be searched by using a fictitious name at a time when the defendant had told the police officer that he was at a different location. Lastly [sic], the affidavit set forth that, approximately two months' [sic] before the criminal homicide, the defendant had been hiding in the victim's bar after hours.

*Commonwealth v. Rompilla,* No. 682/1988, slip op. at 8–9 (C.P. Lehigh County March 12, 1993) (en banc).

In determining the validity of a search warrant, this Court has adopted the totality of the circumstances test articulated by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supply-

ing hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 925 (1985) (quoting *Illinois v. Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (1983)) (citation omitted); *see also* Rule 2003(a) of the Pennsylvania Rules of Criminal Procedure ("[n]o search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits"). A finding of probability of criminal activity is sufficient to support the probable cause requirement of a search warrant; a *prima facie* showing of such activity is not required. *Commonwealth v. Baker,* 532 Pa. 121, 126–27, 615 A.2d 23, 25 (1992). After reviewing the affidavit underlying the warrant and giving due deference to the conclusions of the issuing magistrate, we find that probable cause existed to support the search warrant executed on Appellant's hotel room. *Commonwealth v. Council,* 491 Pa. 434, 444, 421 A.2d 623, 628 (1980). Accordingly, Appellant's argument must be rejected as meritless.[10]

Appellant argues lastly that the trial court erred in allowing a transcript of a rape victim's testimony to be read to the jury during the sentencing phase. Appellant claims that the Commonwealth was appealing to the passions of the jury and could have utilized a different method to describe what had hap-

10. When police entered Appellant's hotel room armed with the aforementioned search warrant, they were accompanied by a parole officer who held a parole detainer. This detainer was based on the fact that Appellant was observed drinking alcohol in violation of one of his conditions of parole. Appellant maintains that the presence of the parole officer was a pretext because the search warrant executed on his hotel room was not based on probable cause. Based on our finding that the search warrant was supported by probable cause, we need not address this issue. We note, however, that parole officers may arrest a parolee without a warrant for violating any of the terms of his parole. *See* 61 P.S. § 331.27

pened. The Commonwealth responds that it was necessary to prove that Appellant had a history of convictions for felonies involving violence and that reading the transcript of the victim's testimony was the most efficient way to present the facts of one of the prior convictions.

Our review of the record affirms the Commonwealth's contention that the reading of the victim's testimony was necessary to support the aggravating circumstance found under 42 Pa.C.S. § 9711(d)(9).[11] Appellant had previously been convicted of theft, burglary, and rape. Prior to the sentencing hearing, defense counsel attempted to have the burglary conviction excluded from the jury's consideration based upon this Court's decision in *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832 (1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987). In *Christy*, this Court held that the trial court had erred in submitting a burglary conviction to the jury for purposes of 42 Pa.C.S. § 9711(d)(9) because the Commonwealth failed to present evidence that the conviction involved the threat or use of violence. *Id.* 511 Pa. at 507–08, 515 A.2d at 840–41. We concluded that "[i]n order for a felony to be includable under 42 Pa.C.S. § 9711(d)(9), the Commonwealth must present evidence that the defendant actually threatened another with violence or actually used violence on another." *Id.* at 508, 515 A.2d at 841.

In *Commonwealth v. Goins*, 508 Pa. 270, 495 A.2d 527 (1985), this Court held that a single felony conviction for a crime of violence does not suffice to establish a significant history under 42 Pa.C.S. § 9711(d)(9). In the instant case, a rape conviction was the only felony for which Appellant was convicted that clearly involved the use of violence. Thus, the Commonwealth had to show that a threat of violence or actual violence was used in the commission of the burglary in order to establish a felony history under 42 Pa.C.S. § 9711(d)(9). In order to achieve that end, the Commonwealth had the testimo-

11. 42 Pa.C.S. § 9711(d)(9) provides that an aggravating circumstance can be found by the jury where "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person."

ny of the rape victim read into the record because the burglary involving the use of violence was part of the same episode.[12] By having an assistant district attorney read from a transcript, we believe that the Commonwealth presented the facts of Appellant's prior crime in a way that minimized the inflammatory impact of his prior crimes to the jury. Accordingly, we conclude that the trial court did not err in allowing the Commonwealth to present evidence of Appellant's prior crime through the reading of the victim's testimony.

Finally, it is our statutory duty to insure that the jury's sentence is based upon the facts presented at the sentencing hearing. *See* 42 Pa.C.S. § 9711(h). Our review of the record in this case satisfies us that the sentence imposed by the jury was not the product of passion, prejudice, or any other arbitrary factor. The record also supports the jury's finding of the aggravating circumstances set forth in 42 Pa. C.S. § 9711(d)(6), (8) and (9).[13] Appellant killed his victim during the commission of the burglary and robbery of the victim's tavern. Moreover, the manner in which Appellant carried out this brutal murder is sufficient to support a finding that the killing was committed by means of torture. "In order to establish the aggravating circumstance of torture, the Commonwealth must prove that the defendant had a specific intent to inflict 'a considerable amount of pain and suffering on a victim which is unnecessarily heinous, atrocious, or cruel manifesting exceptional depravity.'" *Commonwealth v. Daniels*, 537 Pa. 464, 473, 644 A.2d 1175, 1180 (1994) (quoting *Common-*

12. Appellant had broken into the victim's apartment which was located above a bar. According to the victim's testimony, Appellant initially entered the apartment in the belief that she kept a large sum of money there. (N.T. 11/1/88, 75–76). After discovering that the money was located in the bar's cash register, Appellant and the victim proceeded downstairs where he stole the money from the register. (N.T. 11/1/88, 78–80). Appellant then brought the victim back up to the apartment and raped her at knifepoint. (N.T. 11/1/88, 82–90).

13. The aggravating circumstances found by the jury were that "[t]he defendant committed a killing while in the perpetration of a felony," that "[t]he offense was committed by means of torture," and that "[t]he defendant has a significant history of felony convictions involving the use or threat of violence to the person." 42 Pa.C.S. § 9711(d)(6), (8) and (9), respectively.

*wealth v. Thomas*, 522 Pa. 256, 277, 561 A.2d 699, 709 (1989); *Commonwealth v. Pursell*, 508 Pa. 212, 239, 495 A.2d 183, 196 (1985)). In the instant case, Dr. Isidore Mihalakis, a forensic pathologist, testified at the sentencing hearing that the victim was alive during the infliction of almost all of the injuries that he received. (N.T. 11/1/88, 101). These injuries included abrasions, lacerations, blunt force injuries, a fractured nose, and multiple stab wounds. (N.T. 11/1/88, 102). Dr. Mihalakis further testified that the number and location of the various wounds on the victim's body were indicative of injuries that were inflicted with the intent of causing pain. (N.T. 11/1/88, 110). Thus, there is ample evidence on the record to support the jury's finding of torture in this case. Lastly, with respect to Appellant's history of felony convictions involving the use of violence, the record fully supports the jury's finding. In addition to a rape conviction, Appellant was convicted of burglary in which he brandished and used a knife to harm his victim.

The information compiled by the Administrative Office of Pennsylvania Courts indicates that the sentence imposed in this case is not disproportionate to the sentence imposed in similar cases.

Accordingly, the judgment of sentence is affirmed.[14]

MONTEMURO, J., is sitting by designation.

---

14. The prothonotary of the Supreme Court is directed to transmit the full and complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).