Justice Kennedy,
with whom The Chief Justice, Justice Sc alia, and Justice Thomas join,
dissenting.
Today the Court brands two committed criminal defense attorneys as ineffective — “outside the wide range of professionally competent assistance,” Strickland v. Washington, 466 U. S. 668, 690 (1984)—because they did not look in an old ease file and stumble upon something they had not set out to find. By implication the Court also labels incompetent the work done by the three mental health professionals who examined Ronald Rompilla. To reach this result, the majority imposes on defense counsel a rigid requirement to review all documents in what it calls the “case file” of any prior conviction that the prosecution might rely on at trial. The Court’s holding, a mistake under any standard of review, is all the more troubling because this case arises under the Antiter-rorism and Effective Death Penalty Act of 1996. In order to grant Rompilla habeas relief the Court must say, and indeed does say, that the Pennsylvania Supreme Court was objectively unreasonable in failing to anticipate today’s new case file rule.
*397 In my respectful submission it is this Court, not the state court, which is unreasonable. The majority’s holding has no place in our Sixth Amendment jurisprudence and, if followed, often will result in less effective counsel by diverting limited defense resources from other important tasks in order to satisfy the Court’s new per se rule. Finally, even if the Court could justify its distortion of Strickland, Rompilla still would not be entitled to relief. The Court is able to conclude otherwise only by ignoring the established principle that it is the defendant, not the State, who has the burden of demonstrating that he was prejudiced by any deficiency in his attorneys’ performance.
These are the reasons for my dissent.
I
Under any standard of review the investigation performed by Rompilla’s counsel in preparation for sentencing was not only adequate but also conscientious.
Rompilla’s attorneys recognized from the outset that building an effective mitigation case was crucial to helping their client avoid the death penalty. App. 516, 576. Rom-pilla stood accused of a brutal crime. In January 1988, James Scanlon was murdered while he was closing the Cozy Corner Cafe, a bar he owned in Allentown, Pennsylvania. Scanlon’s body was discovered later the next morning, lying in a pool of blood. Scanlon had been stabbed multiple times, including 16 wounds around the neck and head. Scanlon also had been beaten with a blunt object, and his face had been gashed, possibly with shards from broken liquor and beer bottles found at the scene of the crime. After Scanlon was stabbed to death his body had been set on fire.
Substantial evidence linked Rompilla to the crime. See generally Commonwealth v. Rompilla, 539 Pa. 499, 505-506, 653 A. 2d 626, 629-630 (1995). He was at the Cozy Corner Cafe near closing time on the night of the murder and was observed going to the bathroom approximately 10 times dur *398 ing a 1-hour period. A window in that bathroom, the police later determined, was the probable point of entry used by Scanlon’s assailant. A pair of Rompilla’s sneakers seized by the police matched a bloody footprint found near the victim’s body, and blood on the sneakers matched the victim’s blood type. Rompilla’s fingerprint was found on one of the two knives used to commit the murder. Sometime after leaving the bar on the night of the murder, Rompilla checked into a nearby motel under a false name. Although he told the police he left the bar with only two dollars, Rompilla had paid cash for the room and flashed a large amount of money to the desk clerks. The victim’s wallet was discovered in the bushes just outside of Rompilla’s motel room. When the police questioned Rompilla about the murder, his version of events was inconsistent with the testimony of other witnesses.
Rompilla was represented at trial by Fredrick Charles, the chief public defender for Lehigh County at the time, and Maria Dantos, an assistant public defender. Charles and Dantos were assisted by John Whispell, an investigator in the public defender’s office. Rompilla’s defense team sought to develop mitigating evidence from various sources. First, they questioned Rompilla extensively about his upbringing and background. App. 668-669. To make these conversations more productive they provided Rompilla with a list of the mitigating circumstances recognized by Pennsylvania law. Id., at 657. Cf. Strickland, supra, at 691 (“[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable”). Second, Charles and Dantos arranged for Rompilla to be examined by three experienced mental health professionals, experts described by Charles as “the best forensic psychiatrist around here, [another] tremendous psychiatrist and a fabulous forensic psychologist.” App. 672. Finally, Rompilla’s attorneys ques *399 tioned his family extensively in search of any information that might help spare Rompilla the death penalty. Id., at 493-494, 557-558, 669-670, 729-730. Dantos, in particular, developed a “very close” relationship with Rompilla’s family, which was a “constant source of information.” Id., at 557, 729. Indeed, after trial Rompilla’s wife sent Dantos a letter expressing her gratitude. Id., at 733. The letter referred to Charles and Dantos as “superb human beings” who “fought and felt everything [Rompilla’s] family did.” Ibid.
The Court acknowledges the steps taken by Rompilla’s attorneys in preparation for sentencing but finds fault nonetheless. “[T]he lawyers were deficient,” the Court says, “in failing to examine the court file on Rompilla’s prior conviction.” Ante, at 383.
The prior conviction the Court refers to is Rompilla’s 1974 conviction for rape, burglary, and theft. See Commonwealth v. Rompilla, 250 Pa. Super. 139, 378 A. 2d 865 (1977). Before the sentencing phase of the capital case, the Commonwealth informed Rompilla’s attorneys that it intended to use these prior crimes to prove one of the statutory aggravating circumstances — namely, that Rompilla had a “significant history of felony convictions involving the use or threat of violence to the person.” 42 Pa. Cons. Stat. § 9711(d)(9) (2002). Rompilla’s attorneys were on notice of the Commonwealth’s plans, and from this the Court concludes that effective assistance of counsel required a review of the prior conviction case file.
A per se rule requiring counsel in every case to review the records of prior convictions used by the State as aggravation evidence is a radical departure from Strickland and its progeny. We have warned in the past against the creation of “specific guidelines” or “checklist^] for judicial evaluation of attorney performance.” 466 U. S., at 688. See also Wiggins v. Smith, 539 U. S. 510, 521 (2003); Roe v. Flores-Ortega, 528 U. S. 470, 477 (2000). “No particular set of detailed rules for counsel’s conduct can satisfactorily take account of *400 the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant’s cause.” Strickland, 466 U. S., at 688-689 (citations omitted). For this reason, while we have referred to the ABA Standards for Criminal Justice as a useful point of reference, we have been careful to say these standards “are only guides” and do not establish the constitutional baseline for effective assistance of counsel. Ibid. The majority, by parsing the guidelines as if they were binding statutory text, ignores this admonition.
The majority’s analysis contains barely a mention of Strickland and makes little effort to square today’s holding with our traditional reluctance to impose rigid requirements on defense counsel. While the Court disclaims any intention to create a bright-line rule, ante, at 389-390; see also ante, at 393-394 (O’Connor, J., concurring), this affords little comfort. The Court’s opinion makes clear it has imposed on counsel a broad obligation to review prior conviction case files where those priors are used in aggravation — and to review every document in those files if not every single page of every document, regardless of the prosecution’s proposed use for the prior conviction. Infra, at 403, 407-408. One Member of the majority tries to limit the Court’s new rule by arguing that counsel’s decision here was “not the result of an informed tactical decision,” ante, at 395 (O’Connor, J., concurring), but the record gives no support for this notion. The Court also protests that the exceptional weight Rompil-la’s attorneys at sentencing placed on residual doubt required them to review the prior conviction file, ante, at 389-390; ante, at 394-395 (O’Connor, J., concurring). In fact, *401 residual doubt was not central to Rompilla’s mitigation case. Rompilla’s family members did testify at sentencing that they thought he was innocent, but Dantos tried to draw attention away from this point and instead use the family’s testimony to humanize Rompilla and ask for mercy. App. 123-149.
The majority also disregards the sound strategic calculation supporting the decisions made by Rompilla’s attorneys. Charles and Dantos were “aware of [Rompilla’s] priors” and “aware of the circumstances” surrounding these convictions. Id., at 507. At the postconviction hearing, Dantos also indicated that she had reviewed documents relating to the prior conviction. Ibid. Based on this information, as well as their numerous conversations with Rompilla and his family, Charles and Dantos reasonably could conclude that reviewing the full prior conviction case file was not the best allocation of resources.
The majority concludes otherwise only by ignoring Strickland’s command that “[j]udieial scrutiny of counsel’s performance must be highly deferential.” 466 U. S., at 689. According to the Court, the Constitution required nothing less than a full review of the prior conviction case file by Rompilla’s attorneys. Even with the benefit of hindsight the Court struggles to explain how the file would have proved helpful, offering only the vague speculation that Rompilla’s attorneys might have discovered “circumstances extenuating the behavior described by the [rape] victim.” Ante, at 386. What the Court means by “circumstances” is a mystery. If the Court is referring to details on Rompilla’s mental fitness or upbringing, surely Rompilla’s attorneys were more likely to discover such information through the sources they consulted: Rompilla, his family, and the three mental health experts that examined him.
Perhaps the circumstances to which the majority refers are the details of Rompilla’s 1974 crimes. Charles and Dantos, however, had enough information about the prior *402 convictions to determine that reviewing the case file was not the most effective use of their time. Rompilla had been convicted of breaking into the residence of Josephine Macrenna, who lived in an apartment above the bar she owned. App. 56-89. After Macrenna gave him the bar’s receipts for the night, Rompilla demanded that she disrobe. When she initially resisted, Rompilla slashed her left breast with a knife. Rompilla then held Macrenna at knifepoint while he raped her for over an hour. Charles and Dantos were aware of these circumstances of the prior conviction and the brutality of the crime. Id., at 507. It did not take a review of the case file to know that quibbling with the Commonwealth’s version of events was a dubious trial strategy. At sentencing Dantos fought vigorously to prevent the Commonwealth from introducing the details of the 1974 crimes, id., at 16-40, but once the transcript was admitted there was nothing that could be done. Rompilla was unlikely to endear himself to the jury by arguing that his prior conviction for burglary, theft, and rape really was not as bad as the Commonwealth was making it out to be. Recognizing this, Rompilla’s attorneys instead devoted their limited time and resources to developing a mitigation case. That those efforts turned up little useful evidence does not make the ex ante strategic calculation of Rompilla’s attorneys constitutionally deficient.
One of the primary reasons this Court has rejected a checklist approach to effective assistance of counsel is that each new requirement risks distracting attorneys from the real objective of providing vigorous advocacy as dictated by the facts and circumstances in the particular case. The Court’s rigid requirement that counsel always review the case files of convictions the prosecution seeks to use at trial will be just such a distraction. Capital defendants often have a history of crime. For example, as of 2003,64 percent of inmates on death row had prior felony convictions. U. S. Dept, of Justice, Bureau of Justice Statistics, T. Bonczar & T. Snell, Capital Punishment, 2003, p. 8 (Nov. 2004), available *403 at http://www.ojp.usdoj.gov/bjs/pub/pdf/cp03.pdf (as visited June 16,2005, and available in Clerk of Court’s case file). If the prosecution relies on these convictions as aggravators, the Court has now obligated defense attorneys to review the boxes of documents that come with them.
In imposing this new rule, the Court states that counsel in this case could review the “entire file” with “ease.” Ante, at 386, n. 4. There is simply no support in the record for this assumption. Case files often comprise numerous boxes. The file may contain, among other things, witness statements, forensic evidence, arrest reports, grand jury transcripts, testimony and exhibits relating to any pretrial suppression hearings, trial transcripts, trial exhibits, post-trial motions, and presentence reports. Full review of even a single prior conviction case file could be time consuming, and many of the documents in a file are duplicative or irrelevant. The Court, recognizing the flaw in its analysis, suggests that cases involving “warehouses of records” “will call for greater subtlety.” Ibid. Yet for all we know, this is such a case. As to the time component, the Court tells us nothing as to the number of hours counsel had available to prepare for sentencing or why the decisions they made in allocating their time were so flawed as to constitute deficient performance under Strickland.
Today’s decision will not increase the resources committed to capital defense. (At the time of Rompilla’s trial, the Le-high County Public Defender’s Office had two investigators for 2,000 cases. App. 662.) If defense attorneys dutifully comply with the Court’s new rule, they will have to divert resources from other tasks. The net effect of today’s holding in many cases — instances where trial counsel reasonably can conclude that reviewing old case files is not an effective use of time — will be to diminish the quality of representation. We have “consistently declined to impose mechanical rules on counsel — even when those rules might lead to better representation,” Roe v. Flores-Ortega, 528 U. S., at 481; I see *404 no occasion to depart from this approach in order to impose a requirement that might well lead to worse representation.
It is quite possible defense attorneys, recognizing the absurdity of a one-size-fits-all approach to effective advocacy, will simply ignore the Court’s new requirement and continue to exercise their best judgment about how to allocate time and resources in preparation for trial. While this decision would be understandable — and might even be required by state ethical rules, cf. Pa. Rules of Professional Conduct, Preamble, and Rule 1.1 (2005) — it leaves open the possibility that a defendant will seek to overturn his conviction based on something in a prior conviction case file that went unre-viewed. This elevation of needle-in-a-haystack claims to the status of constitutional violations will benefit undeserving defendants and saddle States with the considerable costs of retrial and/or resentencing.
Today’s decision is wrong under any standard, but the Court’s error is compounded by the fact that this case arises on federal habeas. The Pennsylvania Supreme Court adjudicated Rompilla’s ineffective-assistance-of-eounsel claim on the merits, and this means 28 U. S. C. §2254(d)’s deferential standard of review applies. Rompilla must show that the Pennsylvania Supreme Court decision was not just “incorrect or erroneous,” but “objectively unreasonable.” Lockyer v. Andrade, 538 U. S. 63, 75 (2003) (citing Williams v. Taylor, 529 U. S. 362, 410, 412 (2000)). He cannot do so.
The Court pays lipservice to the Williams standard, but it proceeds to adopt a rigid, per se obligation that binds counsel in every case and finds little support in our precedents. Indeed, Strickland, the case the Court purports to apply, is directly to the contrary: “Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules.” 466 U. S., at 696. The Pennsylvania Supreme Court gave careful consideration to Rompilla’s Sixth Amendment claim and concluded that “counsel reasonably *405 relied upon their discussions with [Rompilla] and upon their experts to determine the records needed to evaluate his mental health and other potential mitigating circumstances.” Commonwealth v. Rompilla, 554 Pa. 378, 385-386, 721 A. 2d 786, 790 (1998). This decision was far from unreasonable. The Pennsylvania courts can hardly be faulted for failing to anticipate today’s abrupt departure from Strickland.
We have reminded federal courts often of the need to show the requisite level of deference to state-court judgments under 28 U. S. C. § 2254(d). Holland v. Jackson, 542 U. S. 649 (2004) (per curiam); Middleton v. McNeil, 541 U. S. 433 (2004) (per curiam); Yarborough v. Gentry, 540 U. S. 1 (2003) (per curiam); Mitchell v. Esparza, 540 U. S. 12 (2003) (per curiam); Early v. Packer, 537 U. S. 3 (2002) (per curiam); Woodford v. Visciotti, 537 U. S. 19 (2002) (per curiam). By ignoring our own admonition today, the Court adopts a do-as-we-say, not-as-we-do approach to federal habeas review.
II
Even accepting the Court’s misguided analysis of the adequacy of representation by Rompilla’s trial counsel, Rompilla is still not entitled to habeas relief. Strickland assigns the defendant the burden of demonstrating prejudice, 466 U. S., at 692. Rompilla cannot satisfy this standard, and only through a remarkable leap can the Court conclude otherwise.
The Court’s theory of prejudice rests on serendipity. Nothing in the old case file diminishes the aggravating nature of the prior conviction. The only way Rompilla’s attorneys could have minimized the aggravating force of the earlier rape conviction was through Dantos’ forceful, but ultimately unsuccessful, fight to exclude the transcript at sentencing. The Court, recognizing this problem, instead finds prejudice through chance. If Rompilla’s attorneys had reviewed the case file of his prior rape and burglary conviction, the Court says, they would have stumbled across “a range of mitigation leads.” Ante, at 390.
*406 The range of leads to which the Court refers is in fact a handful of notations within a single 10-page document. The document, an “Initial Transfer Petition,” appears to have been prepared by the Pennsylvania Department of Corrections after Rompilla’s conviction to facilitate his initial assignment to one of the Commonwealth’s maximum-security prisons. Lodging to App. 31-40.
Rompilla cannot demonstrate prejudice because nothing in the record indicates that Rompilla’s trial attorneys would have discovered the transfer petition, or the clues contained in it, if they had reviewed the old file. The majority faults Rompilla’s attorneys for failing to “learn what the Commonwealth knew about the crime,” “discover any mitigating evidence the Commonwealth would downplay,” and “anticipate the details of the aggravating evidence the Commonwealth would emphasize.” Ante, at 385-386. Yet if Rompilla’s attorneys had reviewed the case file with these purposes in mind, they almost surely would have attributed no significance to the transfer petition following only a cursory review. The petition, after all, was prepared by the Department of Corrections after Rompilla’s conviction for the purpose of determining Rompilla’s initial prison assignment. It contained no details regarding the circumstances of the conviction. Reviewing the prior conviction file for information to counter the Commonwealth, counsel would have looked first at the transcript of the trial testimony, and perhaps then to probative exhibits or forensic evidence. There would have been no reason for counsel to read, or even to skim, this obscure document.
The Court claims that the transfer petition would have been discovered because it was in the “same file” with the transcript, ante, at 391, but this characterization is misleading and the conclusion the Court draws from it is accordingly fallacious. The record indicates only that the transfer petition was a part of the same case file, but Rompilla provides no indication of the size of the file, which for all we know *407 originally comprised several boxes of documents. App. 508, 571, 631. By the time of Rompilla’s state postconviction hearing, moreover, the transfer petition was not stored in any “file” at all — it had been transferred to microfilm. Id., at 461. The Court implies in a footnote that prejudice can be presumed because “Pennsylvania has conspicuously failed to contest Rompilla’s” inevitable-discovery argument. Ante, at 391, n. 8. The Commonwealth’s strategy is unsurprising given that discussion of the prior conviction case file takes up only one paragraph of Rompilla’s argument, Brief for Petitioner 35-36, but it is also irrelevant. It is well established that Rompilla, not the Commonwealth, has the burden of establishing prejudice. Strickland, supra, at 694.
The majority thus finds itself in a bind. If counsel’s alleged deficiency lies in the failure to review the file for the purposes the majority has identified, then there is no prejudice: for there is no reasonable probability that review of the file for those purposes would have led counsel to accord the transfer petition enough attention to discover the leads the majority cites. Prejudice could only be demonstrated if the deficiency in counsel’s performance were to be described not as the failure to perform a purposive review of the file, but instead as the failure to accord intense scrutiny to every single page of every single document in that file, regardless of the purpose motivating the review. At times, the Court hints that its new obligation on counsel sweeps this broadly. See ante, at 386, n. 4 (“[t]he ease with which counsel eould examine the entire file . . . ”); ante, at 386, n. 5 (“[Cjounsel had no way of knowing the context of the transcript and the details of the prior conviction without looking at the file as a whole”). Surely, however, the Court would not require defense counsel to look at every document, no matter how tangential, included in the prior conviction file on the off chance that some notation therein might provide a lead, which in turn might result in the discovery of useful information. The Constitution does not mandate that defense attor *408 neys perform busy work. This rigid requirement would divert counsel’s limited time and energy away from more important tasks. In this way, it would ultimately disserve the rationale underlying the Court’s new rule, which is to ensure that defense counsel counter the State’s aggravation case effectively.
If the Court does intend to impose on counsel a constitutional obligation to review every page of every document included in the case file of a prior conviction, then today’s holding is even more misguided than I imagined.
* * *
Strickland anticipated the temptation “to second-guess counsel’s assistance after conviction or adverse sentence” and cautioned that “[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” 466 U. S., at 689. Today, the Court succumbs to the very temptation that Strickland warned against. In the process, the majority imposes on defense attorneys a rigid requirement that finds no support in our cases or common sense.
I would affirm the judgment of the Court of Appeals.