## Commonwealth *v.* Neubauer, Appellant.

Argued October 18, 1940.

Before KELLER, P. J., CUNNINGHAM, BALD-RIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Alexander J. Bielski,* with him *Wm. F. Beatty,* for appellant.

*Chauncey E. Pruger,* Assistant District Attorney, with him *Andrew T. Park,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., November 22, 1940:

George Neubauer, the appellant herein, was tried under an indictment charging (1) extortion, and (2) attempted extortion. He was convicted on the latter offense only, and has appealed from the sentence that was subsequently imposed.

The indictment was drawn under the Act of June 9, 1911, P. L. 833, §1, 18 PS §2932, which provides: "If any person or persons shall, by means of written, printed or oral communications, intimidate, or levy blackmail, or extort money, property or other valuable thing from, any person; or by such written, printed or oral communications attempt to intimidate, annoy, or levy blackmail, or extort money, property or other valuable thing from any person, he, she, or they, so offending, shall be guilty of a misdemeanor ......" This section was substantially re-enacted under the Criminal Code of 1939, approved June 24, 1939, P. L. 872, §801, 18 P.S. §4801.

It appears from the Commonwealth's testimony, which we assume to be true in view of the verdict, that one, Louis Beck, had been convicted of operating a lottery. Shortly after his conviction and before sentence, Neubauer, who had been the real prosecutor in the case against him, arranged to meet Beck. Neubauer told Beck that he was a victim of circumstances and offered to tell the trial judge additional facts that had been uncovered that pointed to his innocence. This statement was made although the evidence in this case strongly indicates that Beck was not innocent and that Neubauer knew that he was not, as he testified, "I never

believed he [Beck] was framed and I don't today." Neu-bauer demanded as a consideration for his service the sum of $1,000, but after some dickering that amount was reduced to $750. Neubauer took precautions as to the place and the manner the negotiations were conducted, so that others would not gain knowledge thereof. Beck finally agreed to pay the $750 and at Neubauer's direction went to East Liverpool, Ohio, where the money was paid. Beck in the meantime, advised his attorney of the agreement, who, in turn, told the district attorney. In accordance with an arrangement made, officers were conveniently stationed and they arrested Neubauer very shortly after he received from Beck an envelope containing the money.

Neubauer denied that he solicited any money from Beck, and contended that he was seeking information as to an alleged gambling racket in Pittsburgh, which was to be in the form of documents that were to be delivered to him in East Liverpool; that he had merely indicated to Beck that after the information was furnished the court probably would give that matter consideration when imposing sentence.

The trial judge instructed the jury that it could not convict of extortion because the actual passing of the money did not take place in Pennsylvania, but that it might convict the defendant of attempted extortion because of what had transpired in Allegheny County between him and Beck prior to the actual delivery of the money.

The appellant contends that the substantive crime, if any, was consummated in Ohio, and therefore he cannot be prosecuted in Pennsylvania for an attempt as one cannot be convicted of an attempt where the crime has been completed: *Commonwealth of Pennsylvania v. J. James Eagan*, 190 Pa. 10, 42 A. 374.

The Commonwealth's answer to that contention is that the crime of extortion was not completed any-

where for the reason that the money was paid over, not because of the extortion demand, but pursuant to a plan, to which Beck was a party, to entrap the defendant. Beck had no intention of parting with the title to the money as he was aware that the police were present for the purpose of capturing the appellant and recovering the amount paid. See *Commonwealth v. Johnson,* 312 Pa. 140, 167 A. 344. In *People v. Gardner,* 144 N. Y. 119, 38 N. E. 1003, cited with approval in the Johnson case, the defendant was indicted for an attempt to commit extortion. An essential element of the crime in that state is that the victim paid the money through fear. The prosecutrix in that case was, in fact, a decoy of the police and was not put in fear by the defendant. The Court of Appeals held that the offense of attempt was completed.

In *Commonwealth v. Eagan,* supra, one Pepper, was attacked, beaten and bound in execution of the attempt to get his money. The money, in fact, on his person was not taken. The court held, p. 22, that if it had been, the crime of robbery would have been completed and the attempt would have merged in it, but the defendant not knowing that Pepper had money or, at least, that it was not taken, the crime of robbery was not consummated, "but that it was attempted was a proper, and indeed unavoidable, inference from the acts done, and the judge was fully justified in submitting the evidence to the jury on that question." The court, p. 21, defined an attempt as "an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it. In law, the definition must have this further qualification, that the overt act must be sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution." The opinion writer goes on to say that when the first step of the actual crime has been taken the intent then

merges into the attempt. Thereafter, abandonment might prevent the completion of the crime but does not save from the consequences of the acts done in an attempt. See also *Commonwealth v. Puretta et al.*, 74 Pa. Superior Ct. 463; *Commonwealth v. Myers*, 131 Pa. Superior Ct. 258, 200 A. 143.

An attempt to commit a crime is defined in 14 Am. Jur., Criminal Law, §65, as follows: "An attempt to commit a crime is any overt act done with the intent to commit the crime and which, except for the interference of some cause preventing the carrying out of the intent, would have resulted in the commission of the crime." See, also, 22 C. J. S., Criminal Law, §73.

"To extort is to wrest from, to exact, to take under a claim of protection, or the exercise of influence contrary to good morals and common honesty. Threats and violence may be used but are not necessarily involved in the offense described. The exercise of dishonest ingenuity in creating the impression of influence to protect from crime may amount to the exacting of money or other property ......". *Commonwealth of Pennsylvania v. Hoagland, Jr.*, 93 Pa. Superior Ct. 274, 276.

The Commonwealth's evidence showed, as above stated, that the appellant sought Beck and told him he could give information to the trial judge that would help him, demanded money for so doing, prescribed the place, time, and manner of delivery, and left Allegheny County, where all the negotiations had occurred, to go to the designated place in Ohio. All the elements to constitute an attempt were proven and the jurisdiction of Allegheny County established. There was (1) an intent to do an unlawful act, (2) the performance of an overt act in furtherance of the accomplishment of the purpose, and (3) there was a failure in the sight of the law of the consummation of the act intended. See *Commonwealth v. Dantine*, 261 Pa. 496, 104 A.

672. We cannot accept the contention of the appellant that if any crime was consummated it was in Ohio not in Allegheny County.

The appellant further urges that the court erred in failing to quash the indictment as it was based upon an information made several hours before the supposed crime, which is admitted by the Commonwealth, but under its theory the attempt, for which the victim was convicted, had already occurred. We are of the opinion that he has no just cause to complain of the time the information was made.

There is the further complaint that the officers illegally arrested the defendant in Ohio. He, however, made no objections to his arrest and voluntarily returned to Pennsylvania without a requisition. In any event that matter had no particular bearing upon the question as to whether defendant was guilty or innocent.

The judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may there be called and he be by that court committed, until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.