## Commonwealth ex rel. Sickler v. Yaukey

*Albert Foster*, for petitioner.
*John W. Mentzer*, for Commonwealth.

SHEELY, P. J., August 1, 1956. — Relator was charged before a justice of the peace with having violated sections 801 and 805 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §§4801 and 4805, in that he did, on May 12, 1956, "by means of typewritten communications dated May 11, 1956, attempt to intimidate, annoy, and to levy blackmail and to thereby extort money from Willis Mellott, a commissioner of Fulton County, Pa. . . . And at the time and place aforesaid the defendant did knowingly send and deliver to Willis Mellott of McConnellsburg, Penna. (a letter) accusing the said Willis Mellott for compounding a felony, and in the same letter accusing John W. Mentzer of a felony with the intent to extort the sum of $5000 from the said Willis Mellott and John W. Mentzer . . .". After his arrest relator waived hearing before the justice of the peace and gave bail for his appearance at the June session of court. He failed to appear at the June session and his bail was forfeited with a notation that the forfeiture would be remitted upon the entry of new bail for his appearance at the October term of court. His bondsman thereupon secured a bailpiece and caused him to be committed to the Fulton County Jail. Relator then wrote the president judge asking for the appointment of counsel to represent him contending that he was illegally detained. Although relator had not yet been indicted, the court appointed counsel for him and he, through counsel, presented a petition for a writ of habeas corpus.

The Commonwealth filed an answer to the petition to which relator demurred. The facts are admitted and argument was held on the legal questions involved. Under the admitted facts, including oral admissions made at the argument, relator had some connection with the County Commissioners of Fulton County relative to the establishment of tax assessment records. This connection was terminated under circumstances

which caused relator to believe that he was entitled to damages from the county. The commissioners denied any liability and relator entered suit against the county in the district court of the United States. That suit is pending and the commissioners have entered a defense thereto. Apparently unwilling to wait for the determination by that court of the liability of the county, relator wrote a letter dated May 11, 1956, apparently mailed at Wallingford, addressed to Willis Mellott, one of the commissioners of Fulton County, demanding a $5,000 settlement by May 12, 1956, stating that if he did not receive full satisfaction by May 16, 1956, he would send a series of open letters, about six in number, to the editors of the newspapers in Bedford, Huntingdon, Chambersburg, Hancock, Md., and McConnellsburg, and also stating that the people of Fulton County would want to know the truth about their elected representatives, that John W. Mentzer had defrauded the borough and the county by not paying taxes on his home for many years, that the commissioners were "covering up" for him and that they had "chosen to cover up fraud and crime and tax evasion" and that, if that were not enough for the commissioners, he would reveal that the assessor of the borough does not assess his friends, and that Mellott, as a commissioner, "uphold(s) such stuff". He concluded his letter with the statement: "Now do you want these facts which I dug up given out to the public for their edification? This is a grave swindle Mr. Mellot and you all are compounding the felony by covering up and putting yourself in grave jeopardy by such actions. This is besides (sic) the point and another matter from having to run again and to face the people of Fulton on such shananigans as you have tried to cover up. Lets make an end to this. I want my five thousand at once."

Relator first contends that if any offense was committed it was committed at Wallingford where the letter was written and mailed and not in Fulton County where the letter was received. There are many cases involving situations where part of an offense is committed in one county and part in another. The question of which county has jurisdiction of the offense depends to a large extent upon the elements of the offense charged. For example, a charge of obtaining property by false pretense is not complete until property is obtained and, hence, the proper county in which to bring the charge is that in which the property was obtained by the accused, although the pretense may have been made in another county: Commonwealth v. Schmunk, 207 Pa. 544, 546 (1904); Commonwealth v. Hancock, 177 Pa. Superior Ct. 585, 594 (1955). This in turn may depend upon where the victim parted with ownership of the property: Commonwealth v. Karpowski, 167 Pa. 225 (1895).

The problem in the present case is not difficult, however. Under section 805 the offense is sending, delivering or uttering the accusing or threatening letter. While the letter was *sent* from Wallingford, it was *delivered* and *uttered* in Fulton County. Whether the mere sending of a letter which is not delivered would be an offense is not here involved as the statute makes both delivering and the uttering of the letter an offense, and if the writer used the mail as his agent for the delivery, he is responsible where the delivery was made. Where one puts in force an agency for the commission of crime, he accompanies the same, in legal contemplation, to the point where it becomes effectual: Commonwealth v. Rogowski, 6 D. & C. 628 (1924).

Likewise, section 801 makes it an offense to attempt to intimidate or annoy another, or to levy blackmail

or extort property by means of a written, printed or oral communication. The act here cannot be complete until the communication is received by the victim since, until then, he could not be intimidated or annoyed. The receipt of the letter in Fulton County therefore gave this court jurisdiction of the offense. Here again, we are not concerned with the question of whether the mere mailing of the letter was an offense. See Commonwealth v. Neubauer, 142 Pa. Superior Ct. 528 (1940) ; Commonwealth v. Fagan, 2 Dist. R. 401 (1893).

In Landa v. State, 26 Tex. App. 580, 10 S. W. 218 (1888), relied upon by relator, defendant was charged with sending and delivering to one Webb a letter threatening to accuse Webb of a criminal offense, "and that he did so *send* said letter with a view to extort money . . .". Because it was not alleged that defendant *delivered* the letter with the view of extorting money, the court held as to that offense the information was insufficient and that the offense of sending the letter was complete in the first county and could not be prosecuted in the second county. In the present case the charge under section 805 alleges both the sending and the delivery of a letter with the intent to extort money.

In Rex v. Esser, 2 East, P. C. 1125; Rex v. Girdwood, 2 East, P. C. 1120, and in People v. Griffin, 2 Barb. 427, it was held that the offense of sending a threatening letter might be prosecuted in the county where the letter was delivered by mail to the prosecutor. See Annotations 19 L. R. A. 775; 43 A. L. R. 545.

We conclude that the prosecution under both sections of the code was properly brought in Fulton County.

Relator next contends that the letter in question was written in an attempt to secure payment of a debt justly due him or, at least, which he thought was justly

due him and, therefore, the sending of the letter could not constitute blackmail or extortion. In other words, it is his contention that an element of the offenses of blackmail and extortion is that the actor intended to secure something to which he was not entitled.

At common law extortion was the unlawful taking by any officer, by color of his office, of any money or thing of value that was not due him, or the taking of more than was due, or the taking of money before it was due, and the offense was confined to officials: Commonwealth v. Saulsbury, 152 Pa. 554, 559 (1893); 22 Am. Jur. 234. This offense is now covered by section 318 of The Penal Code of 1939, 18 PS §4318. Under this definition, of course, defendant must have intended to obtain that to which he was not entitled. But: ". . . The offense prohibited by that statute [section 801 of The Penal Code of 1939, 18 PS §4801] is not common law extortion. The statute makes the acts therein described misdemeanors whether committed under color of office or not. . . . To extort is to wrest from, to exact, to take under a claim of protection, or the exercise of influence contrary to good morals and common honesty. Threats and violence may be used but are not necessarily involved in the offense described. The exercise of dishonest ingenuity in creating the impression of influence to protect from crime may amount to the exacting of money or other property . . .": Commonwealth of Pennsylvania v. Hoagland, Jr., 93 Pa. Superior Ct. 274, 276 (1928); Commonwealth v. Neubauer, 142 Pa. Superior Ct. 528, 533 (1940).

"In common understanding, blackmail and extortion describe the same conduct. While extortion at common law was an offense committed by an officer under color of his office, the term has a broader significance in modern legislation and applies to persons who exact money either for the performance of a duty,

the prevention of injury, or the exercise of influence. *It covers the obtaining of money or other property by operating on fear or credulity or by promise to conceal the crimes of others*": Commonwealth v. Nathan, 93 Pa. Superior Ct. 193, 197 (1928); Commonwealth v. Mann, 111 Pa. Superior Ct. 371, 374 (1934). (Italics supplied.)

Generally, the term "blackmail" is defined as . . . " 'the extortion of money from a person by threats of accusation, or exposure, or opposition in the public prints; hush money; bribe to keep silence; the extortion of hush money; obtaining of value from a person as a condition of refraining from making an accusation against him or disclosing some secret calculated to operate to his prejudice' ": 22 Am. Jur. 238. The words "extort" and "extortion", as used in this definition, cannot be used in the sense of common law extortion, but must be used in the sense of "to wrest from", or "to exact". Nothing is said in any of these definitions as to an intent on the part of the actor to obtain that to which he is not entitled.

The question here raised, i.e., whether the offense of blackmail or extortion can be committed where the sole purpose of the actor is to obtain payment of an honest debt or a debt which he believes is due him, has been considered in a number of jurisdictions under various sets of facts, and under statutes containing different phrasology, with varying results. But, in 22 Am. Jur. 240, Extortion and Blackmail, §21, it is said: "Although there are decisions to the contrary, by the weight of authority it is a criminal offense for a creditor to obtain money or property from a debtor by means of a threat to accuse the latter of a crime, although the creditor believes that the money or property is actually due him, and although he believes the debtor guilty of the crime as to which exposure is threatened."

The question resolves itself largely into whether the legislature intended to denounce the obtaining of property to which one is not entitled, or whether it intended to denounce the means by which property might be obtained. In People v. Beggs, 178 Cal. 79, 84, 172 Pac. 152, 154, the court said: "It is the means employed which the law denounces, and though the purpose may be to collect a just indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition. The law does not contemplate the use of criminal process as a means of collecting a debt. To invoke such process for the purpose named is, as held by all authorities, contrary to public policy."

In Pennsylvania, "where one commences a criminal prosecution for the purpose of compelling his debtor to pay a just debt, it is prima facie evidence of want of probable cause and of malice, and shifts the burden of showing it was not so on the defendant": Squires v. Job, 50 Pa. Superior Ct. 289 (1912). See also Reed v. Loosemore, 197 Pa. 261, 267 (1900). In Commonwealth v. Coolidge, 128 Mass. 55, the court held that it was correct to instruct the jury that "the law did not authorize the collection of just debts by the malicious threatening to accuse the debtor of a crime."

In In re Sherin, 27 So. Dak. 232, 130 N. W. 761 (1911), the court carefully analyzed the authorities from various jurisdictions and noted that one line of decisions, commencing with People v. Griffin, 2 Barb (N. Y.) 427, hold that in order for the taking of property to amount to extortion, it must be property to the possession of which the taker did not make an honest claim of right, and that an attempt to collect what the party believed to be an honest debt could not be held to be done with an "intent to extort". The Griffin case is frequently cited on this point and was followed in

State v. Hammond, 80 Ind. 80, 41 Am. Rep. 791; McMillen v. State, 60 Ind. 216, and Mann v. State, 47 Ohio St. 556, 26 N. E. 226, 11 L. R. A. 656. The court then pointed out that the New York statute before the court in the Griffin case provided that every person who should knowingly send or deliver, etc., any letter or writing, threatening to accuse any person of any crime, etc., "with a view or intent to extort *or gain* any money or property of any description, *belonging to another*, shall, upon conviction, be adjudged guilty of an *attempt to rob*, . . ." (underscoring indicates provisions not contained in the Pennsylvania or the South Dakota statutes), and stated that: "Under a statute so worded there certainly was reason to hold that the word 'extort' was used with a restricted meaning." It is universally held that robbery is forcible larceny, and therefore there must be a larcenous or wrongful taking, and it follows that under the New York statute in order for there to be an offense the attempted taking of the property, as well as the means resorted to to achieve such taking, must be wrongful. In Ohio and Indiana the offense is not referred to as "an attempt to rob" and the statute does not state that the property taken shall be that "belonging to another", but the statutes use the phrase "extort or gain" and "it might well be said that in using the word 'extort' in connection with 'gain' it was intended to provide that the party taking the property must 'gain' something in the sense of securing profit." This was the ground upon which the courts reached their conclusions in Mann v. Ohio and People v. Griffin, supra.

The court in the Sherin case then considered the use of the word "extort" to determine whether it, in itself, implied the getting of something to which a party is not entitled, and pointed out that Webster's New International Dictionary states that the word is de-

rived from the Latin word "extortus" meaning "to twist or wrench out" and defines the word: "(1) To wrest from a person by force, menace, duress, torture, or any undue or illegal exercise of power or ingenuity; to wring (from); to exact; to take or receive by extortion; . . . " The court then said that these definitions show "that the word is properly used to denote the method used to obtain the thing sought, rather than to limit the thing to be obtained in accordance with title or right of possession thereto."

The Pennsylvania statute is very similar to the South Dakota statute considered in the Sherin case and the reasoning of that case can be applied here. The court there concluded that "extortion under our statute includes any 'obtaining of property,' wrongful or otherwise (that is, the 'obtaining of property' to which the party may or may not be lawfully entitled), whenever such property is obtained through the 'wrongful use of force or fear'". See Annotations 135 A.L.R. 728; 11 L.R.A. 656; 18 L.R.A. (N.S.) 77.

It is to be noted that in the crime of obtaining property by false pretenses the pretense must have been made and the property obtained "with intent to cheat and defraud" and that therefore a person cannot be guilty where the pretense is made to induce another to pay an honest debt: Commonwealth v. Thompson, 3 Pa. L. J. Rep. 249, 2 Clark 33 (1843), cited with approval in Commonwealth v. Henry, 22 Pa. 253, 256 (1853). The words "with intent to cheat and defraud" are not contained in the statute defining blackmail and extortion.

We recognize that section 9 of the Criminal Procedure Act of March 31, 1860, P. L. 427, as last amended by the Act of May 26, 1949, P. L. 1816, 19 PS §491, provides for and permits the settlement, under certain circumstances, of the offenses of larceny and fraudulent conversion where the value of

the property involved is less than $200, and of assault and battery, or other misdemeanors, to the injury and damage of the party complaining, and for which there shall also be a remedy by action, and that the application of this statute encourages the bringing of a prosecution, or the threatening to bring a prosecution, for the purpose of forcing a settlement. We also note that in many of the cases in which it was held that a person cannot be guilty of blackmail when he threatens prosecution, etc., in an effort to collect a debt, the alleged crime grew out of the same facts as the debt and liability for the debt was not disputed.

The present case, however, does not come within the provisions of the settlement statute and we express no opinion thereon. Here, the liability of the county to relator is denied and the offenses which he threatens to divulge and to make public have nothing to do with the alleged obligation of the county to him. They are supposedly offenses which he discovered while in the employ of the county and they do not affect him in any way. Implied in his threat to divulge this information to the newspapers if his claim is not paid, is a promise not to divulge the facts if the claim is paid, and that is an attempt to obtain "value from a person as a condition of refraining from making an accusation against him or disclosing some secret calculated to operate to his prejudice", the extortion of hush money, or the "obtaining of money or other property by operating on fear or credulity or by promise to conceal the crimes of others." And in doing so relator actually would gain value because the county would forego its defense to his claim and he would collect, not on the merits of his claim, but because of the personal fear engendered in the minds of the county commissioners.

There are two Pennsylvania cases bearing on the question. In Commonwealth v. Hatch, 11 Dist. R. 180

(1902), an indictment was quashed because the threat was made for the purpose of collecting an admitted debt. No opinion was filed and, for the reasons stated, we disagree with the conclusion reached. The other case is Commonwealth v. Bernstine, 308 Pa. 394 (1932). In that case, defendant, as attorney for a Mrs. Casey, caused a Mrs. Garrod to be arrested for the crime of abortion. He later insisted upon a settlement of the case for $2,500 against the wishes of his clients and without approval of the court. On being charged with extortion he contended that he was attempting to act in a proper manner and to the best interest of his clients. The court held that: "The intimidation of Mrs. Garrod by placing her in fear of disgrace; protecting her from the publicity of this serious charge by withdrawing the prosecution upon the payment of $2,500; the insistence of the appellant to settle the prosecution against the wishes of the Caseys; failure to ask the approval of the court in the settlement of a felony; the amount received by Bernstine; and the way the remainder of the money was distributed, threw a suspicion around this transaction that might well have convinced the jury that there was a levying of blackmail."

The court approved the instruction that ". . . it is not wrong for a lawyer and a private prosecutor to settle a case, if the settlement is not forced upon another by using a warrant of arrest and a prosecution as a means of intimidation; that if there is no intimidation, there is no extortion." This case supports our conclusion that the fact that relator here was attempting to collect a debt which he believed was due him is immaterial.

Relator next contends that the information is defective in that it does not allege the character of the threat so as to apprise defendant of the particular act or words which he is called upon to answer. The

information charges the offense substantially in the language of the statute and identifies the letter by date. An information need not employ the legal phraseology or possess the technical accuracy of an indictment or describe the crime as fully and specifically as is there required: Commonwealth v. Musto, 348 Pa. 300 (1944). If the essential elements of the offense are set forth in terms of common parlance it is sufficient: Commonwealth v. Spallone, 154 Pa. Superior Ct. 282 (1943). When the information puts defendant on notice of the substance of the crime it is sufficient: Commonwealth v. Beloff, 166 Pa. Superior Ct. 286, 289 (1950) ; Commonwealth v. Hancock, 177 Pa. Superior Ct. 585, 592 (1955). In an indictment for sending a threatening letter for the purpose of extorting money it is not necessary to set forth in haec verba a copy of the letter: State v. Stewart, 90 Mo. 507, Anno., 11 L.R.A. 658. We conclude that the information is sufficient in this respect.

Relator next contends that the charge under section 805 of The Penal Code is insufficient in that it alleged that the letter accused John W. Mentzer "of a felony" but did not specify the crime of which he was to be accused. The statute provides that the offense is committed when a letter is sent accusing or threatening to accuse a person "of any offense". The information does state that the letter accused Willis Mellott of compounding a felony, and this is a sufficient allegation of a threat to accuse him of an offense. If Mellott was to be accused of compounding a felony by "covering up" the actions of Mentzer, the writer must have considered the actions of Mentzer to constitute a felony. We think the information is sufficient in this respect.

Relator next contends that the information is not supported by the letter written by defendant in that the information alleges an attempt to extort money

from Willis Mellott and John W. Mentzer whereas the letter shows that if any attempt to extort money was made it was to extort money from the County of Fulton, and that the County of Fulton is not a "person" within the meaning of the act of assembly. The letter indicates that the writer wanted a settlement of his claim and that he wanted Mr. Mellott, as a commissioner of Fulton County, to make the settlement from property of the county over which he and his colleagues had control. The effort was to "wrest from, or to exact" the money from him in his official capacity, which is sufficiently alleged in the information.

Having concluded that relator was not unjustly detained we entered an order on August 1, 1956, dismissing the petition for a writ of habeas corpus and remanding relator to the custody of the sheriff.